IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:18-CR-23 |
| | : | |
| v. | : | (Judge Neary) |
| | : | |
| AARON MORALES, | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Defendant Aaron Morales, proceeding *pro se*, has filed a habeas petition under 28 U.S.C. § 2255 challenging his sentence rendered by the court on July 7, 2023. He claims he received ineffective assistance of counsel and that there were several other errors resulting in an unduly high sentence. After careful review of his arguments, the court will deny Morales's petition because his counsel was not ineffective and his other claims of error were procedurally defaulted.

**I.      Factual Background and Procedural History**

On January 24, 2018, a federal grand jury indicted Aaron Morales, and several other co-defendants, in a fifteen-count indictment. (Doc. 1). Morales was charged with fourteen counts, all dealing with either the distribution of cocaine base (crack cocaine) or heroin. (See generally, id.). Originally, the public defender was appointed to represent Morales, eventually being replaced by CJA Attorney Korey Leslie. (Doc. 120).

While being represented by Attorney Leslie, Morales reached a plea agreement (Doc. 200) (the "First Agreement") with the government. As part of the First Agreement, Morales would plead guilty to count 1 of the indictment:

conspiracy to distribute at least 1 kilogram of heroin and 280 grams of cocaine base in violation of 21 U.S.C. § 846. (Doc. 200 ¶ 1). This conviction would come with a mandatory minimum sentence of 10 years, but the government would withdraw an information establishing a previous drug conviction pursuant to 21 U.S.C. § 851, which would have subjected Morales to a mandatory minimum of 20 years. (Id. ¶ 2; see also Doc. 59). The First Agreement also provided the parties would jointly recommend Morales was responsible for 1 kilogram of heroin, 280 grams of cocaine base, and that he would be subject to a 3-level enhancement for an aggravating role in the drug distribution scheme. (Doc. 200 ¶ 12).

On October 29, 2020, the court conducted a change of plea hearing to ensure Morales was informed of his rights and willingly intended to plead guilty. At the hearing, Morales confirmed that he read, signed, and agreed to the whole First Agreement. (Doc. 294, 10/29/20 Tr. 5:20-6:12). In summarizing the terms of the First Agreement, the prosecutor mentioned the recommend drug weights of 1 kilogram of heroin and 280 grams of cocaine base, as well as the 3-level aggravating role enhancement. (Id. 7:10-16). After hearing that summary, Morales again confirmed those terms were accurate. (Id. 8:18-20). At the end of the hearing, the court found that "Mr. Morales is fully alert, competent, and capable of entering an informed plea. He's aware of and understands the consequences of his plea, which is knowing and voluntary, and amply supported by an independent basis in fact demonstrating each of the elements of the offense charged in count 1." (Id. 18:4-9).

2

The court therefore accepted Morales's plea and adjudged him guilty of count 1. (Id. 18:9-10).

Things changed on July 9, 2021, when Morales moved to withdraw his guilty plea. He argued he was not in the right state of mind as he was depressed from the loss of his mother. (Doc. 277 ¶ 5(d)). He also maintained his innocence of the charges and said prison officials did not give him access to legal materials to fully understand the plea agreement. (Id. ¶ 5(a), (c)). Eventually, Attorney Leslie withdrew, and CJA Attorney Robert J. Daniels was appointed[1] to represent Morales on January 13, 2022. (Doc. 304).

A little over a year later, the government filed a superseding information against Morales, charging him with one count of conspiracy to distribute at least 500 grams of cocaine mixture—not cocaine base—in violation of 21 U.S.C. §§ 841(b)(1)(B)(ii), 846. (Doc. 328). There were no charges relating to heroin in the superseding information. (Id.). The same day, the parties filed another plea agreement (the "Second Agreement"). In the Second Agreement, Morales agreed to plead guilty to the superseding information, agreed to being responsible for at least 500 grams of cocaine, and agreed to a 3-level enhancement for his role in the conspiracy. (Doc. 329 ¶¶ 1, 12).

On March 6, 2023, the court conducted another hearing to accept Morales's guilty plea per the Second Agreement. At the beginning of this hearing, Morales

---

[1] Attorney John Michael Arose was appointed to represent Morales between Attorney Leslie and Attorney Daniels. (Doc. 304).

reported "feeling kind of great right now." (Doc. 341, 3/4/23 Tr. 6:18-20). Again, Morales agreed that he read, signed, and agreed to the Second Agreement. (Id. 9:13-10:3). When the prosecutor summarized the terms of the plea agreement, he mentioned that Morales would be responsible for 500 grams of cocaine and that he would be subject to a 3-level role enhancement. (Id. 11:20-25). While there was an extended discussion about a forfeiture provision in the Second Agreement, (id. 13:8-19:14), Attorney Daniels then mentioned again the aggravating role enhancement being part of the plea agreement, (id. 19:18-23). Morales again said the terms of the Second Plea agreement, as explained by his attorney and the prosecutor, were accurate. (Id. 19:24-20:2). He also said he understood that no one could guarantee what sentence he would receive from the court. (Id. 20:12-14).

      The court also asked the prosecutor to put the facts into the record the government would prove if the case were to go to trial. Before allowing the prosecutor to speak, the court told Morales "if you do not fully admit to those facts, that's perfectly acceptable. You can change or correct anything that you believe is inaccurate because our purpose here is to get on the record a truthful and accurate statement of the criminal conduct that you admit to engaging in that forms the basis for your plea." (Id. 28:25-29:5). As part of the facts of the case, the prosecutor said Morales directly sold a total of 216.26 grams of cocaine, and that when counting sales through associates, he was responsible for over 500 grams of cocaine. (Id. 30:21-31:2). He also explained Morales may have been connected to sale of an unspecified amount of heroin. (Id. 31:8-11).

4

Morales then did not admit to these facts. (Id. 31:13-16). Attorney Daniels interjected that there was an agreement that Morales was responsible for selling approximately 213 grams of cocaine himself, and about 500 grams through associates. (Id. 31:22-32:2). When asked if he agreed to that, Morales said "Um — can I say no?" (Id. 32:11-14). Though, after conferring with Attorney Daniels, Morales said "Yes. Yes, your honor." (Id. 32:15-18). The court then asked if Morales wanted to plead guilty and he said yes. (Id. 32:19-25). Therefore, the court accepted Morales's guilty plea and granted the unopposed oral motion to withdraw Morales's plea of guilty from the First Agreement. (Id. 33:1-8, 12-21).

At sentencing, the court accepted a stipulation from the parties that Morales would only be responsible for the drugs as set forth in the Second plea agreement. That is, he would only be responsible for 500 grams of cocaine mixture, which did not include any amount of heroin or crack cocaine. (Doc. 356, 8/29/23 Tr. 3:5-4:2). There were no other objections, nor were there any motions for departures. (Id. 4:11-14). This resulted in a guidelines imprisonment range of 110 to 137 months. (Id. 4:20-22). When moving to the third part of the sentencing process, Attorney Daniels talked about the struggles Morales faced trying to change his life for the better. (Id. 5:14-6:6). He also mentioned that many of Morales's past convictions were driving with a suspended license—not typical violent felonies, nor drug offenses. (Id. 6:19-25). Attorney Daniels also elicited testimony from Morales's sister and brother on his behalf. (Id. 9:14-13:1). Morales then gave his allocution. (Id. 13:18-28:4). During his allocution, Morales seemed to cast doubt if he was accepting

5

responsibility for 500 grams of cocaine, rather than just the 213 grams he was directly tied to. (Id. 21:16-22). Nevertheless, nowhere does Morales ever deny being directly responsible of 213 grams of *crack* cocaine, despite being charged in connection with just cocaine.

When it came time for sentencing, the court varied upward and sentenced Morales to 156 months' imprisonment. (Id. 37:6-10). The court did so after remarking on Morales's extensive criminal history,[2] his higher-level role in the drug conspiracy, and his risk for recidivism. (Id. 35:6-37:3). No objections were made to the upward variance.

Morales then appealed his sentence. On appeal, Morales, through his new lawyer Robert M. Buttner, argued the sentencing judge improperly varied on factors already accounted for by the guidelines and that the sentencing judge failed to meaningfully consider the 18 U.S.C. § 3553(a), nor did he give a proper explanation, in varying upwards. United States v. Morales, No. 23-2295, 2024 WL 3384921, at *1 (3d Cir. July 12, 2024). Because no objection was lodged at sentencing, the Third Circuit reviewed for plain error. Id. Reviewing Morales's arguments, the Third Circuit affirmed, finding "no error (plain or otherwise)." Id.

On February 19, 2025, Morales timely filed a petition for habeas corpus under 28 U.S.C. § 2255. (Doc. 387; see also Doc. 388 at 1 n.1 (noting Morales's

---

[2] "I don't believe I've ever seen a criminal history as lengthy as Mr. Morales. . . . The accumulation of criminal history points, I believe, in the most I've every seen in my 20 plus years on the federal bench. So it is clear that this is a textbook case for an upward variance in part based on the extensive nature of Mr. Morales's criminal history." (356, 8/29/23 Tr. 35:17-18, 24-36:3).

6

petition as timely)). The court later granted Morales the opportunity to file a more comprehensive motion, given that defendants generally have only one opportunity make arguments in a habeas motion under Section 2255. (Doc. 388). On May 27, 2025, Morales timely filed his more comprehensive motion. (Doc. 391). This matter is now fully briefed and ripe for disposition.

## II.     Legal Standards

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." See 28 U.S.C. § 2255(a); see also 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." See 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting [Section] 2255 relief that are not clearly resolved by the record." See United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must demonstrate (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial. See Strickland, 466 U.S. at 687-88. The defendant bears the burden of proving both prongs. See id. at 687.

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be "highly deferential" toward counsel's conduct. See id. at 689. There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding "would have been different." Strickland, 466 U.S. at 694. The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

**III. <u>Discussion</u>**

Beginning with his ineffective assistance of counsel claim, Morales only argues Attorney Daniels was constitutionally ineffective; he makes no further claim against another attorney. He identifies eight alleged errors on the part of Attorney Daniels: (1) failure to contest there had been a breach of the plea agreement, (2) failure to object to the sentencing Judge's upward variance, (3) failure to challenge the enhancement for an aggravating role, (4) failure to present mitigating factors to the sentencing judge, (5) failure to argue sentencing entrapment, (6) mispresenting the terms of the plea agreement, (7) failure to object to the drug weight relied on by the court, and (8) failure to make other objections at sentencing. (Doc. 391 at 2-3).

None of these arguments are convincing. First, contrary to Morales's claims, it was always a term of his plea agreement to agree to enhancement based on his role in his offense. The First Agreement contained a provision stating the parties would jointly recommend a three-level aggravating role enhancement applies. (Doc 200 ¶ 12). At his first change of plea proceeding, the prosecutor specially mentioned this as one of the key terms of the plea agreement, (Doc. 294 7:10-16). Morales himself acknowledged this term was part of the First Agreement. (<u>Id.</u> 8:18-20). This same provision is found in the Second Agreement. (Doc. 329 ¶ 12). In agreeing to this plea agreement, Morales acknowledged he "read th[e] agreement and carefully reviewed every part of it." (<u>Id.</u> at 33; <u>see also</u> Doc. 341 9:13-10:3). Again, this term was brought up during Morales's second change of plea proceeding where he acknowledges an enhancement for an aggravating role would apply. (Doc. 341

9

19:18-20:2). Thus, any claim by Morales that he was not to receive an aggravating role enhancement is "clearly frivolous based on the existing record." See Booth, 432 F.3d at 545.

Morales also has no ground to stand on regarding the differing drug weights or his general objections to his plea agreement. The Second Agreement, which he signed and agreed to, specified he was responsible for 500 grams of cocaine mixture. (Doc. 329 ¶ 1). If this term, or any other terms, was inaccurate, Morales should not have signed the plea agreement, nor agreed to plead guilty.[3] On this ground too, there can be no claim Attorney Daniels was ineffective.

Moreover, Morales does not reckon with a key difference between his two plea agreements. In the First Agreement, he agreed he was responsible for at least 280 grams of cocaine base, that is, crack cocaine. (Doc. 200 ¶ 1). Conversely, in his second plea agreement, he agreed he was responsible for at least 500 grams of just cocaine. (Doc. 329 ¶ 1). Under U.S. law, cocaine base is treated differently than just cocaine. Indeed, his original plea agreement recommended a *higher* offense level than his second. (Compare Doc. 200 ¶ 12 with Doc. 329 ¶ 12). So, even if the amount was higher, Morales faced *less* exposure by accepting responsibility for 500 grams of cocaine, rather than 280 grams of cocaine base. Thus, the Second Agreement was more generous to Morales, despite using a higher drug amount. This is yet another

---

[3] Morales claims he refused to agree to the Second Agreement. (Doc. 391 at 2). Yet, when asked under oath if he read, signed, and agreed to the second plea agreement, Morals said "Yes." (Doc. 341 9:19-10:3). He cannot now simply baldly assert these sworn statements were false.

way Morales cannot establish prejudice and so cannot make an ineffective assistance of counsel claim. See Strickland, 466 U.S. at 694.

Morales's arguments around his counsel's failure to argue sentencing entrapment also fail. The Third Circuit has yet to rule on whether it even acknowledges sentencing entrapment as a meritorious argument. United States v. Kirschner, 995 F.3d 327, 338 n.2 (3d Cir. 2021); see also United States v. Baird, No. 20-2262, 2021 WL 3612161, at *2 (3d Cir. Aug. 16, 2021) (nonprecedential) (noting there is a circuit split on the issue). Counsel cannot be deemed ineffective for failing to make an argument that would break new precedential ground. See United States v. Mosley, No. 1:17-CR-155, 2023 WL 35738, at *3 (M.D. Pa. Jan. 4, 2023).

Finally, as for Morales's arguments on Attorney Daniels's alleged failure to make unspecific objections at sentencing, his alleged failure to object to the imposition of an upward variance, and his alleged failure to discussing mitigating circumstances to the court, these claims have already been rejected by the Third Circuit. That court already found the sentencing judge made no errors in arriving at his sentence. Morales, 2024 WL 3384921, at *1 (3d Cir. July 12, 2024) ("[W]e discern no error [in the sentencing court's judgment] (plain or otherwise)."). Thus, none of the alleged failures on the part of Attorney Daniels caused Morales any prejudice, and so there is no claim for ineffective assistance of counsel.

Moving to Morales's next block of claims, the government is correct that most are procedurally defaulted. Morales could have raised his claims of prosecutorial misconduct, due process violations, Brady violations, breach of plea agreement,

11

sentencing based on inaccurate information, and improper sentencing enhancements variances and disparity on his direct appeal. He did not. Thus, he must make some showing of "cause and prejudice or actual innocence." United States v. De Castro, 49 F.4th 836, 847 (3d Cir. 2022) (citations omitted). He fails on both standards.

Nowhere in his briefing does Morales address why he did not present any these grounds for relief to the Third Circuit on direct appeal. In replying to the government's procedural default argument, Morales's only contention is that the ineffective assistance of counsel claims are ripe for review. (Doc. 412 at ECF 8). However, the government never contended his ineffective assistance of counsel claims were procedurally defaulted; it addressed that claim on the merits. (Doc. 409 at 13-24). Morales therefore fails to establish cause to allow review of his non-ineffective assistance of counsel claims now. Nor does Morales profess innocence. At most, he asserts he was not responsible for 500 grams of cocaine. (See Doc. 391 at 6). However, he seems to admit he was responsible for over 200 grams of crack cocaine. (See generally, id.). As established above, crack cocaine is a different substance than cocaine mixture and carries stiffer penalties. Thus, Morales does not make an actual innocence claim.

Finally, the government is correct this court does not have jurisdiction over Morales's complaint about receiving good-time credit. United States v. Wilson, 503 U.S. 329, 334-36 (1992). Such a claim may only be brought after a defendant exhausts administrative remedies and brings a petition under 28 U.S.C. § 2241.

Wilson, 503 U.S. at 335-36. Morales fails to demonstrate administrative exhaustion so the court cannot hear his claim on Bureau of Prison's computation of his credits.

Morales's claims are thus rebuffed by his signed plea agreements, his on-the-record colloquies, and his defaulting on his non-ineffective assistance of counsel claims. As such, no "reasonable jurist[] would find the [this] court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability will issue.

## IV. Conclusion

Aaron Morales underwent not one, but two extended colloquies detailing the consequences of pleading guilty to a crime for which he was accused. At those hearings, the trial judge comprehensively explained the terms of his plea agreements, and Morales ultimately agreed that he agreed to those plea agreements and that he accepted the consequences that would follow. He cannot now seek a do over. His *pro se* motion to vacate or set aside his conviction will therefore be denied.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    December 31st, 2025

13